IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
97 OCT 28 PM 2:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

RAMONIA MITCHELL, )

    PLAINTIFF, )

VS. ) CV97-H-1011-S

BARBER DAIRIES, INCORPORATED, )
BARBER'S; BARBER PURE MILK
COMPANY, INC.; BARBER PURE )
MILK COMPANY, INC., d/b/a
BARBER'S, )

    DEFENDANTS. )

ENTERED
OCT 28 1997

## MEMORANDUM OF DECISION

On August 19, 1997 defendants filed a motion to dismiss or alternatively a motion for summary judgment. The motion was treated by the court as a motion for summary judgment and deemed submitted, without oral argument, to the court for decision as of September 18, 1997.

Defendants' August 19, 1997 motion was presented in the form of a speaking motion including legal arguments and citations to legal authorities. The evidence submitted by defendants in support of the motion for summary judgment was attached to the motion.[1]

In accordance with the court's submission order, plaintiff submitted her evidence in opposition to the motion on September

---

[1] The affidavit of Carlyn McFall and a copy of the bargaining agreement between Barber Pure Milk Company and Barber Ice Cream Company and United Diary Workers, Local No. 201 were attached to the motion.



11, 1997[2] and her memorandum in opposition to the motion for summary judgment on September 18, 1997. On September 19, 1997 defendants filed a motion for leave to file a reply brief. Plaintiff filed an objection to Defendants' motion to file the reply brief on September 23, 1997. The defendants' motion for leave will be granted.

## I.   BACKGROUND INFORMATION

### A.   Procedural Background

Plaintiff Ramonia Mitchell filed a complaint on March 14, 1997 in the Circuit Court of Jefferson County, Alabama against defendants Barber Dairies, Inc.; Barber's; Barber's Pure Milk Company, Inc.; and Barber's Pure Milk Company, Inc. d/b/a Barber's (collectively referred to as "defendants"). Defendants removed this action to federal court on April 23, 1997 asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331, based on the argument that the determination of plaintiff's retaliatory discharge claim would necessarily require interpretation of the Collective Bargaining Agreement ("CBA").

On June 6, 1997, the court granted plaintiff's motion to remand in relation to Count I of the original complaint and remanded plaintiff's claims against defendants for failure to pay her full worker's compensation benefits to state court. However,

---

[2] Plaintiff's evidence in opposition to the motion included an affidavit by plaintiff, excerpts from the deposition of Carlyn McFall and a copy of an unpublished order in Steele v. Bruno's, Inc., CV 88-P-0233-S.

the court denied plaintiff's motion to remand in relation to the claims in Count II of the original complaint asserting that plaintiff was terminated in retaliation for pursuing her rights under the worker's compensation law in violation of § 25-5-11.1 of the *Alabama Code*.

In the June 6, 1997 order, the court determined that it has jurisdiction over the worker's compensation retaliation claims embraced in Count II of the complaint due to the preemptive power of § 301 of the Labor Management Relations Act. See *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218 (1981). Plaintiff's response in opposition to defendants' motion for summary judgment includes a motion by plaintiff asking the court to reconsider its earlier ruling denying remand and to take judicial notice of Judge Sam C. Pointer's opinion in *Steele v. Bruno's, Inc.*, CV-88-0233-S. Plaintiff's motion to reconsider will be denied.

B.   **Factual Background**

Plaintiff was employed by defendants as a Relief Operator from March 30, 1995 until April 29, 1996. See Mitchell Affidavit; McFall Affidavit. As a member of the United Dairy Workers Local 201, plaintiff's employment was governed by the terms of a CBA. See Mitchell Affidavit; McFall Affidavit; Ex. A to McFall Affidavit.

According to plaintiff, she sustained two on-the-job back injuries while employed by defendants. See Mitchell Affidavit. On or about June 16, 1995, plaintiff injured her back when she

3

feel after the drag iron she was using to pull empty cases slipped. Id. Then on or about September 21, 1995 plaintiff injured or aggravated her back when she stepped onto a mat on a freshly mopped floor causing her to fall. Id. After this second fall, plaintiff was put on a leave of absence. Id.

On or about May 1, 1996 plaintiff received a certified letter from Darrell DuVall, Plant Superintendent for defendants, stating that plaintiff was being terminated because she had been on a leave of absence which exceeded her length of service. Id. In the letter DuVall notifies plaintiff that she was "being terminated under Article XIX, Section 8 of the CBA that states 'An employee shall lose his/her seniority for any absence exceeding 18 months or length of service whichever is shorter.'" See Exhibit to Defendants' March 29, 1997 Response To Plaintiff's Motion To Remand.

Plaintiff was released by her treating physician to return to work with some restrictions on or about June 25, 1996. See Mitchell Affidavit. Plaintiff returned to the Barber facility and talked with DuVall and Carlyn McFall, Director of Human Resources for Barber Dairies, stating that she wanted to return to work. Id.; McFall Affidavit.

As plaintiff was leaving the Barber facility she talked with Walter Brown, the local union president. Id. Plaintiff told Mr. Brown about the letter of termination she had received, that she had been released to return to work and that she was ready to go to work. Id. Plaintiff stated that she signed some paperwork

out by Brown's car that day. Id. According to plaintiff, she has never received any further word from the union concerning this matter. Id.

According to McFall, plaintiff filed a grievance on May 7, 1996 concerning her discharge which requested that she be "returned to work position as new employee." See McFall Affidavit. McFall stated that on June 18, 1996 defendants declined to return plaintiff to her previous position. Id. Since that time plaintiff has neither appealed this grievance nor sought to invoke the arbitration provisions of the CBA under Section V. Id.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

Defendants moved for summary judgment in their favor on plaintiff's remaining claims embraced in Count II of the complaint. Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings

or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed

6

verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come

7

forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, \_\_\_\_\_ U.S. \_\_\_\_, 116 S. Ct. 2175 (1996).

Pursuant to the court's earlier ruling treating plaintiff's claim for retaliatory discharge as preempted by § 301 of the Labor Management Relations Act, plaintiff's state law claim in Count II has been converted into a federal claim under § 301. Therefore, plaintiff's claim must now be analyzed according to the federal law applicable to a § 301 claim.[3]

An employee is required to exhaust any grievance or arbitration remedies provided in the CBA before bringing a § 301 action against her employer. <u>See</u> <u>DelCostello v. Teamsters</u>, 462 U.S. 151, 163-65 (1983). The CBA in this case provides that if an aggrieved employee and her union steward or representative is unable to reach an agreement with management, then the grievance may be appealed to arbitration. <u>See</u> Agreement, Article V, Sections 2 and 3, at p.4. It is undisputed that while plaintiff filed a grievance, she never appealed that grievance to arbitration.

---

[3] Plaintiff's brief incorrectly attempts to have this court look to state law to resolve these matters. Plaintiff's claim arises under federal law as a result of the preemptive force of section 301. <u>Sams v. United Food and Commercial Workers Int'l</u>, 835 F.2d 848, 850 (11th Cir. 1988).

8

Plaintiff asserts in her affidavit that she talked with the local union president and filled out paperwork in order to instigate the grievance procedures. See Mitchell Affidavit. According to plaintiff, she was never notified of the progress of the grievance once it was filed. Id. Plaintiff asserts that defendants are in some way responsible for plaintiff's failure to exhaust the grievance procedure due to McFall's acknowledgment that there should have been a hearing on plaintiff's written grievance.

The CBA provides that the company will treat a grievance as withdrawn unless it is appealed within five days. See Agreement, Article V, Section 2. McFall testified that the company considered plaintiff's grievance dead because the time to take further action had run and the union did not pursue the matter. See McFall depo. at 66-67.

There is an exception to the exhaustion requirement when the union breaches its duty of fair representation. Gutierrez v. United Foods, Inc., 11 F.3d 556, 559, n.8 (5th Cir. 1994). Yet, the exception cannot be applied here because despite notice from the court that her claims would have to be pursued under § 301, plaintiff has not asserted any claim against the union for a breach of its duty of fair representation.[4]

---

[4] Based on the language of the CBA and the testimony by McFall, it appears likely that it may have been the union's responsibility to continue pursuing plaintiff's grievance, or at least to consider a further pursuit of the grievance. However, plaintiff has alleged no misconduct by the union.

Plaintiff also attempts to differentiate this case from Mason v. Continental Group, Inc., 763 F.2d 1219 (11th Cir. 1985), because in Mason the plaintiffs did not even attempt to instigate the grievance procedures. While it is undisputed that in this case plaintiff did take the necessary steps to instigate the grievance procedures under the CBA, neither she nor her union representative took the further steps necessary to continue to process. The policy and reasoning that requires initial use of the established grievance procedures equally support a requirement that an aggrieved employee like plaintiff exhaust all available dispute resolution procedures.

> An employee may not substitute a lawsuit in federal court for use of the grievance procedure: "A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness . . . as well as eviscerate a central tenant of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance."

Sams v. United Food & Commercial Workers Union, 835 F.2d 848, 850 (11th Cir. 1988) (quoting Allis-Chalmers v. Lueck, 471 U.S. 202, 220 (1985)). Allowing an employee to pursue an abandoned grievance by a § 301 suit would frustrate the arbitration process and the tenants of federal labor law in the same manner as in the case where an employee fails to initiate the grievance process.

Based on the foregoing, defendant's motion for summary judgment is GRANTED.[5]  A separate order will be entered.

DONE this 26th day of October, 1997.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Alternatively, this action may be untimely under the applicable six month statute of limitations.  See DelCostello v. Teamsters, 462 U.S. 151 (1983).  It is undisputed that plaintiff received her termination letter around May 1, 1996 and did not file this action until March 14, 1997.